**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| CYNTHIA G. HUNT, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:12-CV-0244-Y |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Cynthia G. Hunt ("Hunt") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"). In June 2009, Hunt protectively applied for disability insurance benefits and supplemental security income, alleging that her disability began on December 29, 2007.[1] (Tr. 12, 108-21.)

---

[1] Hunt previously filed an application for DIB in September 2000, which was denied on a technical basis on September 22, 2000. (Tr. 12.) The ALJ did not find any reason to reopen or otherwise reconsider the prior determination. (Tr. 12.)

After her application for benefits was denied initially and on reconsideration, Hunt requested a hearing before an administrative law judge ("ALJ"). (Tr. 12, 51-60, 64-73.) The ALJ held a hearing on September 29, 2010, and issued an unfavorable decision on November 12, 2010. (Tr. 12–24, 29-46.) On January 6, 2012, the Appeals Council denied Hunt's request for review, leaving the ALJ's decision as the final decision of the Commissioner in her case. (Tr. 4-7.) Hunt subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern DIB and SSI benefits. *See* 20 C.F.R. Pt. 404 (2012) (DIB); 20 C.F.R. Pt. 416 (2012) (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and the SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(b), 416.920(b). "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." *Id.* §§ 404.1572, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(c), 461.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited*

*in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).   Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.   20 C.F.R. §§ 404.1520(d), 416.920(d).   Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work.  *Id.* §§ 404.1520(f), 416.920(f).   And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  *Id.* §§ 404.1520(g), 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).[2]   At steps one through four, the burden of proof rests upon the claimant to show that he is disabled.  *Crowley*, 197 F.3d at 198.   If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments.  *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).   Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).   It is more than a mere scintilla, but less than a preponderance.  *Id.*   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Id.*   This Court may neither reweigh the evidence in the record nor

---

[2] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis.  *Id.* §§ 404.1520(a)(4), 416.920(a)(4).  At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work.  *Id.* §§ 404.1520(e), 416.920(e).

substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## I. ISSUES

In her brief, Hunt presents the following issues:

1. Whether the ALJ erred in concluding that Hunt did not have any severe nonexertional impairments; and

2. Whether the ALJ properly applied the Medical-Vocational Guidelines at Step Five in finding that Hunt was not disabled.

(Plaintiff's Brief ("Pl.'s Br.") at 1.)

## II. ALJ DECISION

In his November 12, 2010 decision, the ALJ concluded that Hunt was not disabled within the meaning of the SSA. (Tr. 13, 24.) In making this determination, the ALJ proceeded to follow the five-step sequential evaluation process set forth above. The ALJ, noting that he had carefully considered the entire record, first found that Hunt's eligibility for DIB under Title II expired on December 31, 2007. (Tr. 13.) At Step One, the ALJ found that Hunt had not engaged in any substantial gainful activity since December 29, 2007, the alleged onset date of Hunt's disability. (Tr. 11.) At Step Two, the ALJ found that Hunt suffered from:

> [D]egenerative changes of the right knee, amenable to impending joint arthroplasty, with healing anticipated in less than 12 months; mild degenerative changes of the lumbar spine, L4-5, status post successful microdiscectomy and laminectomy in June, 2009; mild degenerative changes of the cervical spine; crack cocaine abuse; marijuana abuse; alcohol abuse; adjustment disorder, with exacerbations of anxiety and depression, amenable to medication; and nicotine abuse.

(Tr. 13.)  Later in his decision, the ALJ also found that Hunt did not "have a severe mental impairment."  (Tr. 17.)  At Step Three, the ALJ held that Hunt's impairments did not meet or equal the severity of any impairment contained in the Listing.  (Tr. 13-18.)

As to Hunt's RFC, the ALJ found that Hunt retained the "functional capacity to perform, on a continuing and sustained basis, the physical exertional requirements of light work activity" and that there were "no severe nonexertional limitations."  (Tr. 21; *see* Tr. 21-23.)  At Step Four, the ALJ found that Hunt could not return to her past relevant work.  (Tr. 13, 23.)  Finally, at Step Five, the ALJ opined that, based on Hunt's RFC, age, education, and past work experience, she retained the ability to perform a significant number of jobs in the national economy.  (Tr. 24.)  Thus, the ALJ concluded that Hunt was not disabled and had not been disabled at any time through the date of the decision.  (Tr. 13, 23.)

## III. DISCUSSION

### A. <u>Severe Nonexertional Impairments</u>

In her brief, Hunt argues, in essence, that the ALJ failed to properly evaluate her physical and mental nonexertional[3] impairments.  (Pl.'s Br. at 8.)

#### 1. Nonexertional Physical Impairments

As to her physical nonexertional impairments, Hunt claims that the ALJ erred when he failed to explain why he declined to give considerable weight to the opinion of the state agency medical consultant ("SAMC"), who found that Hunt was incapable of climbing ladders, ropes, and scaffolds and could occasionally climb ramps and stairs, stoop, and crouch.  (Pl.'s Br. at 8;

---

[3] Social Security Ruling ("SSR") 96-9p defines nonexertional limitation or capacity as follows:

> [A]ny work-related limitations and restrictions that are not exertional.  Therefore, a nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling.  Environmental restrictions are also considered to be nonexertional.

SSR 96-9p, 1996 WL 374180, at *5 (S.S.A. July 2, 1996) (emphasis omitted).

see Tr. at 618.)  In a Physical Residual Functional Capacity Assessment ("PRFC") dated October 28, 2009, SAMC Jeanine Kwun, M.D. ("SAMC Kwun"), opined, *inter alia*, that Hunt could: (1) frequently balance, kneel, and crawl; (2) occasionally climb ramps and stairs, stoop, and crouch; and (3) never climb ladders, ropes or scaffolds.  (Tr. 618; *see* Tr. 616-23.)  Dr. Kwun further stated: "Alleged limitations due to back pain are wholly credible currently, however she is recovering from her surgery and it is expected that after treatment she will gain full use of her back within 12 months from the date of surgery."  (Tr. 623.)

In this case, the ALJ found that Hunt had the physical RFC to perform the physical exertional requirements of light work and that there were "no severe nonexertional impairments."  (Tr. 21.)  In making this determination, the ALJ reviewed the voluminous medical evidence in the record relating to Hunt's physical impairments.  The ALJ noted, *inter alia*, that Hunt was treated on December 31, 2007 at Harris Methodist Fort Worth after sustaining a lumbar strain as the result of a slip and fall at work two days earlier and that subsequent x-rays noted more sustained lumbar problems.  (Tr. 14, 201-03.)  The ALJ also reported that in February 2008 diagnostic tests revealed "degenerative disc disease at L4-5, with mild stenosis, disc protrusion at L5-S1, moderately indenting the expected thecal sac contours, and degenerative changes of the cervical spine, C4-6, with no stenosis."  (Tr. 14; *see, e.g.*, Tr. 652-53; *see also* Tr. 221-223, 228-29.)  The ALJ noted that nerve conduction studies were normal besides mild mononeuropathy in the right wrist.  (Tr. 14; *see* Tr. 229-30.)

The ALJ further stated that, subsequently, Hunt was treated with epidural steroid injections and physical therapy.  (Tr. 14, 206-13.)  The ALJ reported that Omar Selod, D.O. ("Dr. Selod") examined Hunt in April 2008 and found that Hunt had:

> [C]ervical and lumbar range of motion intact in all arcs, strength 5/5 throughout the bilateral upper and lower extremities, normal sensation in the upper and lower

extremities, deep tendon reflexes 2/4 throughout, positive Tinel's at the right wrist, without strength deficits, grip deficits, or atrophy, negative on the left and at both elbows.

(Tr. 14, 228-29.) The ALJ also noted that in May 2008 Hunt told Miguel Banta Jr., M.D. ("Dr. Banta"), that she had 60% improvement in back complaints. (Tr. 14, 360, 386.) A follow-up examination in June 2008 with Dr. Banta showed "intact neurological findings, normal movement, the ability to toe walk, heel walk, and tandem walk without difficulty, with no limp." (Tr. 14; *see also* Tr. 361, 397.) The ALJ also reported that, in June 2008, Aaron Levine, M.D. ("Dr. Levine"), also examined Hunt and noted "intact neurological findings, with no spasms of the right trapezius and right sacroiliac area, normal gait and posture, and the ability to sit comfortably." (Tr. 14; *see also* Tr. 362.)

The ALJ further stated that Francisco Batlle, M.D. ("Dr. Batlle"), evaluated Hunt in July 2008, finding "full range of motion of the cervical spine, and subjective decrease in forward flexion of the lumbar range of motion due to complaints of pain." (Tr. 14, 242-45.) The ALJ also reported that "the record, thereafter, shows conservative treatment for the ensuing 9 months, with no objective medical findings substantiating worsening or recurrent symptoms." (Tr. 14.) However, the ALJ reported that a re-evaluation by Dr. Batlle in April 2009 led to the claimant electing a "lumbar microdiscectomy for herniated disc at L4-5." (Tr. 15; *see* Tr. 246-48.) This surgery was performed on June 11, 2009 (Tr. 15, 252), and on August 10, 2009, Dr. Batlle noted Hunt had marked improvement from her surgery. (Tr. 15; Tr. 625.)

Thereafter, the ALJ noted that, in September 2009, Stella Nwankwo, M.D. ("Dr. Nwankwo"), assessed Hunt and found that she had:

> [F]unctional movements in regard to sitting, standing, and moving about, good grip strength bilaterally, the ability to reach, handle, finger, and feel, the ability to heel, toe, and tandem walk without difficulty, as well as normal gait and station,

independent ambulation, the ability to handle objects, and intact fine finger manipulation. . . . [T]enderness to palpation of the lumbar scar, and decreased flexion of the lumbar spine, but otherwise full range of motion, without spasms, with negative straight leg raising, normal upper extremities, with full range of motion, with no spasm, atrophy, synovitis, tenderness, or edema, negative Tinel's and negative Phalen's, and normal lower extremities, with full range of motion, with no bony or tissue deformities, no crepitus, edema, heat, redness, calf tenderness, effusion, or atrophy. . . . 5/5 power in all areas, negative Babinski, and assessed mild degenerative changes at L4-5, status post laminectomy and microdiscectomy at L4-5.

(Tr. 16; *see* Tr. 586-90.) The ALJ further noted that a subsequent examination by Dr. Batlle in January 2010 revealed that Hunt had "5/5 motor strength throughout, normal gait, without difficulty toe walking, heel walking, or tandem walking, straight leg raising negative bilaterally, sensory examination normal, and coordination intact." (Tr. 15, *see* Tr. 635-36.)

Next, the ALJ reported that, in March 2010, Hunt was brought to the emergency room after allegedly being assaulted while playing cards. (Tr. 15, 654-70.) Todd Cook, M.D. ("Dr. Cook"), noted in his evaluation of Hunt that tests indicated that the pain in her right hip was caused by degenerative changes and sclerosis of the acetabulum, warranting total joint replacement, with surgery scheduled in July 2010. (Tr. 15, 654-70.) During the evaluation, Hunt informed Dr. Cook that this pain was *different* from the pain she had in her back previously.[4] (Tr. 658.) Ultimately, the July 2010 surgery was cancelled because Hunt tested positive on a urine drug screen, which was further substantiated

---

[4] Although not specifically mentioned by the ALJ in his discussion of Dr. Cook's evaluation, the ALJ cited to Exhibits 16F-18F when referring to the March 2010 emergency room visit. (Tr. 15.) Dr. Cook's evaluation is included in Exhibit 17F (Tr. 658). Thus, the Court can assume the ALJ reviewed this information. *See, e.g.*, *Hammond v. Barnhart*, 124 F. App'x 847, 851 (5th Cir. 2005) ("The ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it, and the ALJ's decision states explicitly that he considered the entire record in his decision."); *Poret v. Astrue*, No. 11-527, 2011 WL 5910173, at *9 (E.D. La. Nov. 7, 2011) ("It is clear from the ALJ's decision that she considered the medical opinion of 'the State Agency consultant who reviewed the medical records' (Tr. 17), namely, Dr. Singh[, and n]o substantial rights of plaintiff were affected by the ALJ's failure to identify Dr. Singh by name or to cite Exhibit 9F in addition to Exhibit 8F.").

when Hunt admitting to crack cocaine, marijuana, and alcohol consumption the day before the scheduled surgery. (Tr. 15, 673, 679.) There is no evidence that Hunt ever underwent a surgery related to this alleged injury.[5]

Regarding Hunt's RFC determination, the ALJ stated, *inter alia,*:

> In assessing the claimant's residual functional capacity for work, I note that the opinions of the State agency at the initial and reconsideration levels did not provide a rationale and findings of fact[] were rendered without the benefit of personally observing the claimant and reviewing all of the pertinent medical reports, and were wholly conclusory and unsupported. My determination of the claimant's residual functional capacity therefore is in no way based on such opinions. 20 C.F.R. §§ 404.1527(f) and 416.927(f); SSR 96-9p.

(Tr. 23.) Hunt argues that the ALJ should have given considerable weight in the RFC determination to Dr. Kwun's opinion in the PRFC that Hunt could only occasionally climb ramps and stairs, stoop and crouch and never climb ladders, ropes or scaffolds because it is the only opinion in the record regarding Hunt's physical nonexertional impairments. (Pl.'s Br. at 8-10.) Hunt claims that SAMC Kwun's opinion established the presence of physical nonexertional impairments and the failure to give weight to this opinion, absent an explanation, does not support a finding that the ALJ's RFC determination was supported by substantial evidence. (Pl.'s Br. at 8-9.)

RFC is what an individual can still do despite his limitations.[6] Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.; See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A

---

[5] At the September 29, 2010 hearing before the ALJ, Hunt testified that the surgery was rescheduled for November 17, 2010. (Tr. 41.) However, the Court can find no evidence in the record that this surgery ever took place.

[6] The Commissioner's analysis at Steps Four and Five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from Step Three to Step Four.

regular and continuing basis is an eight-hour, five days a week, or equivalent schedule. *Id.* RFC is not the least an individual can do, but the most. SSR 96-8p at *2. The RFC assessment is a function-by-function assessment, with both exertional and nonexertional factors to be considered and is based upon all of the relevant evidence in the case record. *Id.* at *3-5. The ALJ will discuss the claimant's ability to perform sustained work activity on a regular and continuing basis, and will resolve any inconsistencies in the evidence. *Id.* at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, and must consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security rulings also caution that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.,* SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), superseded by SSR 91-7c, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan,* 925 F.2d 785, 790 (5th Cir. 1991). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. § 404.1527(d); *see also Frank v. Barnhart,* 326 F.3d 618, 620 (5th Cir. 2003).

Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence

(from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. §§ 404.1527(e) 416.927(e); SSR 96-6p, 1996 WL 374180, at *2-4 (S.S. A. July 2, 1996). Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions. SSR 96-6p, 1996 WL 374180, at *2.

In this case, it is clear that the ALJ adequately weighed all the evidence in the record of Hunt's physical nonexertional impairments, including the evidence set forth above, before determining that Hunt had the RFC to perform a full range of light work and did not have any severe nonexertional impairments. It is also clear from the ALJ's decision that he did take SAMC Kwun's PRFC findings into account when determining whether Hunt suffered from any severe nonexertional physical impairments.[7] (Tr. 23.) Although the ALJ did not specifically discuss SAMC Kwun's PRFC in his decision, the ALJ did cite to exhibits that contained SAMC Kwun's PRFC several times during the decision. (Tr. 14 (citing to Exhibits 1F-3F; 5F; 8F-15F); see Tr. 618 (SAMC Kwun's PRFC, Ex. 10F); see also Tr. 15, 18.) In addition, the ALJ, citing to the regulations and social security ruling governing the treatment of SAMC opinions, made a general reference to all of the opinions of the SAMCs,[8] which would include SAMC Kwun's

---

[7] The Court notes that, at Step Three, the ALJ also stated, *inter alia*,

I have concluded that the objective medical evidence fails to establish that the claimant has any impairment or combination of impairments which meets or equals in severity the requirements of any listing in the Listing of Impairments. In reaching this conclusion, I have considered the opinions of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion. 20 C.F.R. §§ 404.1527(f) and 416.927(f); SSR-96-6p.

(Tr. 18.) While the ALJ is apparently referring to the Disability Determination and Transmittal forms completed by SAMCs Kwun and Kelvin Samaratunga, M.D. (*see* Tr. 47-50) and not Kwun's PRFC, this statement reinforces that the ALJ was aware of and considered the SAMCs' opinions at all steps of his decision. *See Andrews v. Astrue*, No. 4:11-CV-733-Y, 2013 WL 127211, at 19 n.10 (N.D. Tex. Jan 9, 2013).

[8] The Court notes that the ALJ referred to SSR 96-9p and 20 C.F.R. §§ 404.1527(f) and 416.927(f) (redesignated in 2012 as 20 C.F.R. §§ 404.1527(e) and 416.927(e)). (Tr. 18.)

opinions in the PRFC, and set forth specific reasons why he was not considering such opinions in making his RFC determination. *See, e.g., Hawkins v. Comm'r of Soc. Sec. Admin.*, No. 3:11-CV-2992-B, 2013 WL 1129816, at *17 (N.D. Tex. Mar. 11, 2013) ("Although the ALJ did not explicitly reference [the SAMC's] RFC assessment by name, she explained that her RFC assessment 'differed from the opinion of the State Agency physician, who found Plaintiff could perform all postural maneuvers on an occasional basis.'"). The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation. *See Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (per curium) ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence."); *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("That [the ALJ] did not follow formalistic rules in his articulation compromises no aspect of fairness or accuracy that this process is designed to ensure.")

Furthermore, even though no other physician specifically referenced Hunt's specific ability to climb ramps, stairs, ladders, ropes or scaffolds or crouch, there is substantial evidence, as set forth above, that supports the ALJ's finding that Hunt was not limited in her ability to do these activities. The evidence shows that up until the alleged assault in March 2010, doctors continually noted a general improvement in Hunt's condition up to and after her June 2009 lumbar microdiscectomy, 5/5 strength in all areas, and full range of motion absent some decreased flexion in the lumbar spine. (*See, e.g.*, Tr. 228-29, 586-90, 625.) The evidence further shows that any problems sustained after her alleged assault were different from the pain associated with the original accident giving rise to a claim of disability and that Hunt did not have surgery to correct these new issues because she was drinking alcohol and using drugs. As indicated above, the "ALJ as factfinder has the sole responsibility for weighing the evidence and

may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan,* 925 F.2d at 790 (citing *Bradley v. Bowen,* 809 F.2d 1054, 1057 (5th Cir. 1987)).

Even assuming the ALJ erred in properly evaluating the opinion of SAMC Kwun, courts "have declined to reverse and remand on procedural ground when it is clear that the procedural error did not compromise the decision-making process." *Alejandro,* 291 F. Supp. 2d 497, 515 (S.D. Tex. 2003) (holding, in part, that ALJ's failure to expressly consider findings of SAMC was harmless as there was substantial evidence in the record supporting the ALJ's decision).[9] *See, e.g., Morris v. Bowen,* 864 F.2d 333, 335 (5th Cir.1988); *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988) ("Procedural perfection in administrative proceedings is not required. This court will not vacate a judgment unless the substantial rights of a party have been affected."); *Turney v. Astrue,* No. 4:08–CV–189–Y, 2009 WL 980323, at *5 (N.D. Tex. Apr. 9, 2009) ("The ALJ should have addressed the findings of the state agency medical consultants, but his failure to do so was harmless.").

In this case, Hunt fails to provide any evidence showing that **all** of the light work jobs that exist in sufficient numbers in the national economy that she would be able to perform **require** the ability to climb ropes, ladders, or scaffolds or climb stairs and ramps, stoop or crouch more than occasionally. According to the regulations, light work is defined as follows:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of
> objects weighing up to 10 pounds. Even though the weight lifted may be very

---

[9] The Court notes that there is a different, albeit similar, standard of review when there is a violation of a social security ruling as opposed to a violation of a regulation. Violation of a regulation invokes a "harmless error" analysis whereas violation of a ruling invokes a "prejudice" analysis. *See McNair v. Comm'r of Soc. Sec. Admin.,* 537 F. Supp. 2d 823, 838 (N.D. Tex. 2008) (stating that "[p]rejudice and harmless error analysis, although similar in substance, are different procedurally"). "Remand for failure to comply with a [social security] ruling . . . is appropriate when a complainant affirmatively demonstrates ensuant prejudice." *McNair,* 537 F. Supp. 2d at 838 (citing *Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981)). "A claimant can show prejudice by showing that adherence to the ruling might have led to a different decision." *Id.* (citing *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir. 2000)). "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Id.*

little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 CFR §§ 404.1567(b), 416.967(b).  Furthermore, Social Security Ruling ("SSR") 83-14

states:

Relatively few jobs in the national economy require ascending or descending ladders and scaffolding. . . .  [T]o perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job).

SSR 83-14, 1983 WL 31254, at *2 (S.S.A. Jan. 1, 1983).  Hunt offers no support for her

assertion that a full range of light work **in this case** would require climbing ladders, scaffolds, or

ropes or require her to climb ramps, stairs, stoop or crouch more than occasionally.[10]  Even

assuming the ALJ erred in considering the opinion of SAMC Kwun, Hunt has not shown that her

substantial rights have been affected by any alleged error.  Thus, remand on this issue is not

required.

### 2.  Nonexertional Mental Impairments

In her brief, Hunt also argues that the ALJ erred in finding that Hunt did not have any

severe nonexertional mental impairments that should be included in her RFC determination

because he failed to give weight to the opinions of Deborah Gleaves, Ph.D. ("Dr. Gleaves"),

---

[10] In this case, the ALJ found that Hunt had the RFC to perform light work and had no nonexertional limitations.  The ALJ further found that, pursuant to the Medical-Vocational Guidelines ("GRIDS"), Hunt was not disabled.  According to the GRIDS, the "full range of light work includes the functional capacity to perform sedentary as well as light work" and there are approximately "1,600 separate sedentary and light unskilled occupations [that] can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(a).

Licensed Professional Counselor Jean Bell Williams ("LPC Williams"), and SAMC Charles

Lankford, Ph.D. ("SAMC Lankford"). (Pl.'s Br. at 11.)

In a Mental Residual Functional Capacity Assessment ("MRFC") dated October 27,

2009, SAMC Lankford found, *inter alia,* that Hunt was moderately limited in her ability to

understand, remember, and carry out detailed instructions and maintain attention and

concentration for extended periods. (Tr. 612; *see* Tr. 612-15.)   SAMC Lankford stated that

"Cl[aimant] can understand, remember and carry out detailed but not complex instructions, make

decisions, attend and concentrate for extended periods, accept instructions and respond

appropriately to changes in routine work settings."   (Tr. 614.)   In a Psychiatric Review

Technique Form ("PRTF"), also dated October 27, 2009, SAMC Lankford found that Hunt had

an adjustment disorder with mixed anxiety, antisocial personality characteristics, alcohol

dependence in partial sustained remission, and full cannabis dependence, none of which satisfied

the diagnostic criteria set forth in sections 12.04, 12.08 or 12.09, respectively, of the Listings.

(Tr. 601, 605-06.) As to the "B" criteria of the Listings, SAMC Lankford found that Hunt: (1)

was mildly restricted in her activities of daily living and in maintaining concentration,

persistence or pace; (2) had moderate difficulties in maintaining social functioning; and (3) had

no episodes of decompensation of extended duration. (Tr. 608.)

In a September 24, 2009 consultative exam, Dr. Gleaves stated that Hunt "had difficulty

with tasks that required attention, concentration, and short-term memory" and a limited ability to

cope with stress and assigned her a GAF[11] score of 50. (Tr. 592-96.) In a diagnostic evaluation

---

[11] A GAF or Global Assessment of Functioning score is a standard measurement of an individual's overall
functioning level with respect to psychological, social, and occupational functioning.   American Psychiatric
Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994) (DSM-IV).

A GAF score between 41 and 50 indicates serious symptoms or any serious impairment in social,
occupational, or school functioning. DSM-IV at 34.

for surgery dated September 17, 2008, LPC Williams also assigned Hunt a GAF score of 50.
(Tr. 644-48.)

As stated above, the ALJ found that Hunt had the RFC to perform light work, with no
nonexertional limitations. (Tr. 21.) As to Hunt's mental impairments, the ALJ stated, *inter alia*,
the following in his decision:

> The record also shows intermittent complaints of anxiety and depression,
> situational to personal stress, including the claimant's separation from her spouse
> in January 2008, as well as financial difficulty, untreated, save Xanax, an
> anxiolytic, prescribed by Dr. Brooks, and psychological monitoring in relation to
> her workman's compensation claim. Upon consultative psychological evaluation
> in August, 2009,[12] Deborah Gleaves, Ph.D. reported a fully-oriented, adequately-
> groomed individual, with upright posture, clear and coherent speech, logical
> thought processes, depressed and anxious mood, with appropriate affect, and
> average intellectual functioning. The claimant arrived independently, by bus,
> reporting that she was let off at the wrong stop, and had to walk the rest of the
> way. By her own report, the claimant has a legal history of being arrested and
> jailed for fighting, for burglary of a habitat, for robbery of an individual, for
> public intoxication, for possession of a controlled substance, as well as a history
> of drinking all day long, every day, and a history of detoxification at Pine Street
> in the 1990's.
>
> Upon questioning by Dr. Gleaves, the claimant reported the ability to live
> independently in her own apartment, the ability to take care of her personal
> hygiene and grooming needs, the ability to prepare meals, utilizing the
> microwave, and the ability to keep her bed made, although no other household
> chores. By her own report, the claimant is able to handle her own finances, is
> able to utilize public services for her transportation, to do so independently,
> although relying on neighbors or relatives to take care of shopping and grocery
> chores, at times, and is able to attend church on an occasional basis. Dr. Gleaves
> considered mental status findings and the claimant's level of functioning,
> proposed diagnoses of adjustment disorder with mixed anxiety and depressed
> mood, alcohol dependence in partial sustained remission, cannabis abuse in full
> sustained remission, and assessed a GAF of 50.
>
> I have considered the claimant's adjustment disorder with intermittent
> exacerbations of situational anxiety and depression, controlled on medication,
> currently stable with good housing, and history of cocaine, marijuana, and alcohol

---

[12] The Court notes that the ALJ stated in his opinion that Dr. Gleaves examined Hunt in August 2009. (Tr.
16.) However, the record indicates that Hunt was evaluated by Dr. Gleaves on September 24, 2009. (Tr. 592.)

abuse, and have concluded that she has mild restriction in her activities of daily living, that she has mild difficulty in maintaining social functioning, that she has mild difficulty maintaining concentration, persistence, or pace, and that she has never decompensated.[13]   There is, therefore, no objective evidence that the claimant has a mental impairment that imposes any limitation on her residual functional capacity for work activity, and I have concluded that she thus does not have a severe mental impairment.

I have given significant weight to the actual objective medical findings reported by Dr. Levine, Dr. Selod, Dr. Batlle, Dr. Banta, Dr. Nwankwo, Dr. Gleaves, and those in emergency department records, which reveal . . . history of cocaine abuse, marijuana abuse, heavy alcohol abuse, adjustment disorder, with exacerbations of anxiety and depression, amendable to medication, and nicotine abuse.   I find such assessments consistent with the capacity to perform a full range of light work activity.

(Tr. 16-18 (internal citations omitted) (footnote added); *see* Tr. 19-22.)

In this case, it is clear that the ALJ relied on substantial evidence, as set forth above, in determining that Hunt did not have a severe mental impairment or any severe nonexertional mental limitations.   As to the examination of Dr. Gleaves, the ALJ clearly considered such

---

[13] Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. § 404.1520a. In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1).  To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment.  20 C.F.R. § 404.1520a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001).  For most Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and sometimes C of the adult mental disorders contained in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(2) & (c).  "Paragraph B" contains four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation.  20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.  The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described. 20 C.F.R. § 404.1520a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment. 20 C.F.R. § 404.1520a(d).  If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings.  20 C.F.R. § 404.1520a(d)(1).  If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder of the Listing.  20 C.F.R. § 404.1520a(d)(2).  To determine if it meets or is equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. § 404.1520a(d)(2).  If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment.  20 C.F.R. § 404.1520a(d)(3); *see Boyd*, 239 F.3d at 705.

examination and even relied upon the objective findings made by Dr. Gleaves in making his RFC determination. (Tr. 17, 21.) As to Dr. Gleaves' findings that Hunt had difficulty with tasks that required attention, concentration and short-term memory and had a limited ability to cope with stress, the ALJ took such findings into consideration, along with the other evidence in the record, when determining that Hunt had a mild restriction in her activities of daily living, mild difficulty in maintaining social functioning and concentration, persistence, and pace, and no episodes of decompensation. (Tr. 17.)

As to SAMC Lankford's finding that Hunt was moderately limited in maintaining social functioning and that she could not understand, remember, or carry out complex tasks, the Court has already concluded that the ALJ properly considered the SAMC opinions, as set forth in section A.1., *supra*. In resolving inconsistencies between evidence in the medical record and the ALJ's RFC determination, "[t]he ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).

As to the GAF scores found by LPC Williams[14] and Dr. Gleaves, the Court notes that a GAF score is not determinative of a claimant's ability to work. See *Fuller v. Astrue*, No. 4:09-CV-197-A, 2010 WL 5566819, at *8 (N.D. Tex. Oct. 13, 2010), *adopted in* 2011 WL 94549 (N.D. Tex. Jan. 11, 2011). Federal Courts have specifically declined to find a link between a

---

[14] The Court also notes that an LPC is not an "acceptable medical source" whose opinion is entitled to controlling weight. *Johnson v. Astrue*, No. 3:08-CV-1488-BD, 2010 WL 26469, at *4 (N.D. Tex. Jan. 4, 2010); *Nickerson v. Astrue*, No. 3-07-CV-0921-BD, 2009 WL 321298 at *6 (N.D. Tex. Feb. 6, 2009), *citing Zumwalt v. Astrue*, 220 Fed. Appx. 770, 2007 WL 853206 at *9 (10th Cir. Mar.22, 2007) (MHMR counselors who evaluated plaintiff were not "acceptable medical sources"); *see also Johnson v. Apfel*, No. 98-0674-AH-G, 2000 WL 208741 at *2 (S.D. Ala. Feb.17, 2000) (licensed professional counselor is not an "acceptable medical source"). Only licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are considered "acceptable medical sources" that can provide evidence that a claimant suffers from a medically determinable impairment. *See* 20 C.F.R. §§ 404.1513(a) & 416.913(a).

claimant's GAF score and the ability or inability to work. *See* 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000) (declining to endorse the GAF scale for use in Social Security and SSI disability programs and stating that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"); *see also, e.g.*, *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *Wind v. Barnhart*, 133 F. App'x 684, 692 n. 5 (11th Cir. 2005); *Andrade v. Astrue*, No. 4:11-CV-318-Y, 2012 WL 1106864, at *10 (N.D. Tex. Feb. 13, 2012), *adopted in* 2012 WL 1109476 (N.D. Tex. Apr. 2, 2012). In this case, the ALJ: (1) properly considered and discussed the evidence in the record in assessing Hunt's RFC; (2) adequately explained the reasoning for his RFC decision, his decision that Hunt did not suffer from any mental or nonexertional impairments, and for giving less weight to certain evidence; and (3) exercised his responsibility as a factfinder in weighing the evidence in choosing to incorporate limitations into his RFC determination that were most supported by the record. *Muse*, 925 F.2d at 790. Consequently, the ALJ did not err and remand is not required.

### B.    Medical-Vocational Guidelines

Hunt also argues that ALJ erred in applying the Medical-Vocational Guidelines ("GRIDS") at Step Five of the disability evaluation process in determining that she was not disabled. (Pl.'s Br. at 12-13.) Specifically, Hunt claims that, because significant nonexertional impairments existed, it was error for the ALJ to rely on the GRIDS to direct a finding that Hunt was not disabled. (Pl.'s Br. at 12-13.)

When the Commissioner decides at Step Five that a claimant can perform available, alternative employment, that decision must be supported by substantial evidence. *Allsbury v. Barnhart*, 460 F. Supp. 2d 717, 721 (E.D. Tex. 2006). Typically, the Commissioner satisfies this burden in one of two ways. *Id.*; *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The first

way is that the Commissioner can receive testimony from a vocational expert or consider similar vocational resource evidence. *Allsbury*, 460 F. Supp. 2d at 721. The second way is that the "Commissioner can take administrative notice of [the] availability of alternative work by consulting predetermined findings contained" in the GRIDS.[15] *Id.*

The GRIDS provide an analysis of the various vocational factors such as age, education, and work experience in combination with the individual's residual functional capacity for work in evaluating a claimant's ability to engage in substantial gainful activity. 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a). Where findings of fact coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the claimant is or is not disabled. *Id.* The GRIDS are to be used when a claimant has an impairment that causes the claimant to have limitations in meeting the strength requirements for a job. *Id.* "Use of the [GRIDS] does not violate the [SSA] and is judicially approved as a fair and just method of determining disability." *Nobles v. Comm'r of Soc. Sec. Admin.*, No. 9:00-CV-128, 2002 WL 553735, at *3 (E.D. Tex. Apr. 10, 2002) (citing *Heckler v. Campbell*, 461 U.S. 458 (1983)).

However, the GRIDS may not be fully applicable where the nature of a claimant's impairment is nonexertional, such as when a claimant has certain mental, sensory, or skin impairments. 20 C.F.R. Pt.404, Subpt. P, App. 2, § 200.00(e). The Fifth Circuit has held that the use of the GRIDS is appropriate when a claimant suffers only from exertional impairments or if a claimant's nonexertional impairments do not significantly affect his RFC. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Carry v. Heckler*, 750 F.2d 479, 483 n.9 (5th Cir. 1985). When the claimant has a nonexertional factor that limits the range of jobs a claimant can perform, the ALJ cannot rely on the GRIDS and must

---

[15] The GRIDS consist of three tables (for sedentary, light, and medium work) which may be consulted once a claimant's RFC capacity is determined. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201-03. The tables direct conclusions of disability or non-disability based upon claimant's age, education, and previous work experience. *Id.*

rely on vocational expert testimony to establish that jobs exist. *Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). *See also Bolton v. Callahan*, 984 F. Supp. 510, 513-14 (N.D. Tex. 1997); *Frazier v. Chater*, 903 F. Supp. 1030, 1034 (N.D. Tex. 1995).

In this case, the Court, as set forth above, has determined that the ALJ did not err in finding that Hunt did not have any severe nonexertional impairments. Accordingly, it was proper for the ALJ to rely on the GRIDS to determine that a significant number of jobs exist in the national economy for which Hunt may perform. *See Newton*, 209 F.3d at 458. Consequently, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **April 18, 2013**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 4, 2013.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv